# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| RITA V. BLACKMON, | : | |
| Plaintiff, | : | |
| vs. | : | CA 17-0542-MU |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | : | |
| | : | |
| Defendant. | | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Rita V. Blackmon brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 15 & 17 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")). Upon consideration of the administrative record, Plaintiff's brief, the Commissioner's brief, and the parties' arguments at the July 17, 2018 hearing before the undersigned, the Court concludes that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 15 & 17 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of
(Continued)

## I. Procedural Background

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on July 21, 2014, alleging disability beginning on December 11, 2013. (*See* Tr. 187-88.) Blackmon's claim was initially denied on November 12, 2014 (Tr. 75 & 95-100) and, following Plaintiff's January 5, 2015 written request for a hearing before an Administrative Law Judge ("ALJ") (*see* Tr. 101-02), hearings were conducted before an ALJ on May 17, 2016 (Tr. 45-56) and November 10, 2016 (Tr. 36-44). On December 8, 2016, the ALJ issued a decision finding that the claimant was not disabled and, therefore, not entitled to a period of disability and disability insurance benefits. (Tr. 17-31.) More specifically, the ALJ proceeded to the fifth step of the five-step sequential evaluation process and determined that Blackmon retains the residual functional capacity to perform those sedentary jobs identified by the vocational expert ("VE") during the administrative hearing (*compare id.* at 30 *with* Tr. 42-43). On January 11, 2017, the Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council (Tr. 186); the Appeals Council denied Blackmon's request for review on November 2, 2017 (Tr. 1-3). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

Plaintiff alleges disability due to diabetes with neuropathy, obesity, depression and panic attacks. The Administrative Law Judge (ALJ) made the following relevant findings:

---

Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.")).

3. The claimant has the following severe impairments: diabetes with neuropathy, obesity, depression, and panic attacks (20 CFR 404.1520(c)).

. . .

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

. . .

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except her work is limited to simple, routine and repetitive tasks involving only simple work-related decisions with few, if any, workplace changes; and occasional interaction with the public, coworkers, and supervisors.

. . .

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

. . .

7. The claimant was born on October 26, 1969 and was 44 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in

**significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).**

. . .

**11. The claimant has not been under a disability, as defined in the Social Security Act, from December 11, 2013, through the date of this decision (20 CFR 404.1520(g)).**

(Tr. 20, 22, 29 & 30 (emphasis in original)).

## II. Standard of Review and Claims on Appeal

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform h[is] past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[2] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

to her past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that she cannot do her past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform those sedentary jobs identified by the VE during the administrative hearing, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per

---

[3] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Blackmon asserts two reasons the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ committed reversible error in failing to assign controlling weight to the RFC opinion of her treating physician, Dr. Christopher Jenkins, and instead adopting his own medical opinion; and (2) the ALJ committed reversible in that his RFC determination at the fifth step of the sequential evaluation process is not supported by substantial evidence. Since Plaintiff's first assignment of error has import with respect to the ALJ's RFC determination, the undersigned considers all of Plaintiff's assignment of errors under the larger "umbrella" of the ALJ's RFC determination.

The responsibility for making the residual functional capacity determination rests with the ALJ. *Compare* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Security Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as

a whole." (internal citation omitted)). A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]"—"is a[n] [] assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins v. Commissioner of Social Security,* 457 Fed. Appx. 868, 870 n.5 (11th Cir. Feb. 9, 2012) (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)); *see also* 20 C.F.R. § 404.1545(a)(3) (in assessing RFC, the Commissioner is required to consider "descriptions and observations of [the claimant's] limitations from [] impairments, including limitations that result from [] symptoms, such as pain, provided by [the claimant] . . . .").

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd,* 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013); *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether

substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[4] However, in order to find the ALJ's RFC assessment supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer, supra,* 2013 WL 593497, at *3 ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."); *McMillian v. Astrue*, 2012 WL 1565624, *4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all

---

[4] It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue*, 2010 WL 3825617, *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna*, 395 Fed. Appx. at 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ **could have** relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

cases—include an RFC or PCE from a physician" (internal punctuation altered and citation omitted)); *but cf. Coleman v. Barnhart,* 264 F.Supp.2d 1007 (S.D. Ala. 2003).

In this case, the Court finds that the ALJ linked his RFC assessment—that is, sedentary work with some mental limitations—to specific evidence in the record bearing upon Blackmon's ability to perform the physical, mental, sensory and other requirements of work. (*Compare* Tr. 22-29 *with generally* Tr. 88-90, 214-16, 280-91, 295-300, 302, 305-08, 316, 322-26, 333-40, 348-51, 354-61, 399-402, 416-24 & 427-37.) In particular, even though the Plaintiff argues that the ALJ erred in failing to accord substantial weight to the opinion of her treating psychiatrist, Dr. Christopher Jenkins, and accorded too much weight to the consultative evaluation of Dr. Aaron Mates, and, as a consequence of both errors, improperly determined that she can perform sedentary work with mild to moderate mental limitations only, this Court finds that the ALJ committed no such errors.

Before addressing the Plaintiff's specific arguments, the undersigned notes that "[w]eighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the process for determining disability." *Kahle v. Commissioner of Social Security,* 845 F.Supp.2d 1262, 1271 (M.D. Fla. 2012). In particular, "the ALJ must give the opinion of the treating physician 'substantial or considerable weight unless "good cause" is shown to the contrary.'" *Williams v. Astrue,* 2014 WL 185258, *6 (N.D. Ala. Jan. 15, 2014), quoting *Phillips, supra,* 357 F.3d at 1240 (other citation omitted); *see Nyberg v. Commissioner of Social Security,* 179 Fed.Appx. 589, 591 (11th Cir. May 2, 2006) (citing to same language from *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1159 (11th Cir. 2004)).

> Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert v. Commissioner of Social Sec.*, 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) (per curiam).

Dr. Christopher Jenkins, a psychiatrist who initially treated Blackmon beginning on October 7, 2002 and then began treating her again on April 16, 2015 after a four-year cessation in treatment (*see* Tr. 338), completed a Mental Residual Functional Capacity questionnaire on February 8, 2016 on which he indicated that Plaintiff had a moderate restriction of activities of daily living, marked difficulty in maintaining social functioning, constant deficiencies in concentration, persistence and pace, and had experienced 4 or more episodes of decompensation in work or work-like settings causing her to withdraw from that situation or experience exacerbation of signs or symptoms for a period of at least 2 weeks (Tr. 341). In addition, Dr. Jenkins specifically noted on the form that Blackmon would experience the following limitations in her ability to perform the following activities on a sustained basis in a routine work setting: (1) marked limitations in (a) understanding, carrying out and remembering instructions, (b) responding appropriately to supervision, (c) responding appropriately to coworkers, (d) responding appropriately to customary work pressures, (e) performing simple tasks, and (f) and performing repetitive tasks; and (2) extreme limitations in the ability to complete work-related activities in a normal workday or workweek. (Tr. 341-42.) And although this form, in bold print, requested an explanation of limitation ratings of moderate or greater

in the Comments section (*see* Tr. 341), Dr. Jenkins did not provide any explanation regarding his marked and extreme ratings (*see* Tr. 342). In addition, while Dr. Jenkins indicated that the noted limitations had lasted or could be expected to last for 12 months or longer, he did not indicate the earliest date to which the limitations applied. (*See id.*) Finally, Dr. Jenkins indicated that a psychological evaluation was not obtained on the date he completed the form. (*See id.*)

The ALJ accorded little weight to Dr. Jenkins's mental assessment because, "for the reasons" set forth in this section of his decision, it was "inconsistent with the evidence[.]" (Tr. 28.) Given the contents of the ALJ's prior discussion (*see* Tr. 22-28), it is clear that the ALJ accorded little weight to Dr. Jenkins's February 8, 2016 mental RFC assessment on the basis that it was both inconsistent with the other evidence (including, medical evidence) of record as well as with Dr. Jenkins's own medical records (*compare id. with* Tr. 28 (ALJ's weighing of Dr. Jenkins's mental assessment)). For her part, Plaintiff argues that the ALJ erred to reversal in failing to accord controlling weight to Dr. Jenkins's mental RFC assessment because that assessment is, in fact, consistent with the medical evidence of record, and, along the way, contends that the ALJ accorded too much weight to the opinions of consultative examiners Dr. John Davis and Dr. Jack Carney.

The Court begins its analysis by observing that the ALJ's finding that Dr. Jenkins's mental RFC assessment was "inconsistent with the evidence" (Tr. 28), which as previously indicated means inconsistent with all evidence of record (inclusive of all the medical—that provided by Dr. Jenkins and all other medical providers—and other evidence of record), if accurate, constitutes a valid reason (or reasons) for failing to

11

accord Dr. Jenkins's mental RFC assessment controlling weight. *See Gilabert, supra,* 396 Fed.Appx. at 655 (recognizing that good cause for rejecting a treating physician's opinion include that the opinion is inconsistent with the doctor's own medical records, the opinion is not bolstered by the evidence, and that the evidence supports a contrary finding). In this case, the undersigned disagrees with Plaintiff's view of the evidence and finds that the ALJ's decision to accord Dr. Jenkins's mental RFC assessment little weight is supported by substantial evidence of record. First, Dr. Jenkins's own treatment records do not support the marked and extreme limitations reflected on the mental RFC form,[5] those records reflecting the following: (1) on April 16, 2015, Blackmon's judgment and insight were normal, she was oriented x3, her recent and remote memory were normal, her attention and concentration were normal, her language was normal, her fund of knowledge was intact, her mood and affect was mixed bipolar, her speech was normal in all spheres, her thought processes were normal in all spheres, her associations were normal, suicidal and homicidal ideation and irritability were absent, although she did have auditory hallucinations at times, and her GAF score was 55 (Tr. 338-40); (2) on July 30, 2015, the only items different from the examination on April 16, 2015 are that this report contains no mention of auditory hallucinations, Plaintiff's mood and affect were noted as being depressed, and her GAF score was 60 (*see* Tr. 333-35); (3) on February 11, 2016, the only difference noted is that Plaintiff's GAF score increased to 65 (*see* Tr. 355-57); and (4) on April 19, 2016, the treating psychiatrist indicated that the psychiatric examination was "ok," with the only specific notation being

---

[5] This certainly helps explain, at least in part, why Dr. Jenkins did not follow the form instruction to explain in the Comments section the basis for limitation ratings "**of moderate or greater**[.]" (*Compare* Tr. 341 *with* Tr. 342.)

that Blackmon's mood and affect were depressed, and her GAF score had again increased, this time to 70 (*see* Tr. 349-51). The foregoing relatively mild examination findings simply cannot be "squared" with the marked to extreme limitations noted by Dr. Jenkins on February 8, 2016, a date he did not even examine Blackmon, particularly when the GAF scores given by Jenkins on actual examination of Plaintiff—ranging from 55 to 70—indicate moderate to mild symptoms and levels of functioning (*compare* Tr. 335, 340, 349 & 357 *with* http://www.rattler-firebird.org/va/gafchart.php (reflecting that GAF scores of 51-60 indicate moderate symptoms and moderate difficulty in social, occupational, or school functioning, while GAF scores of 61-70 indicate some mild symptoms, with some difficulty in social, occupational or school functioning but generally functioning pretty well with some meaningful interpersonal relationships)). Indeed, given that Blackmon's GAF score increased on every visit with Dr. Jenkins, and were such that Plaintiff was only having mild symptoms and was functioning pretty well some three days after Dr. Jenkins filled out the mental RFC assessment (*compare* Tr. 355-57 *with* Tr. 341-42), that assessment stands in stunning contrast to Dr. Jenkins's examination findings and, therefore, was properly eschewed by the ALJ. *See Gilabert, supra,* 396 Fed.Appx. at 655 ("It is undisputed that the GAF scores Thebaud assigned to Gilabert indicated only moderate difficulty in functioning and were therefore inconsistent with the severe limitations that Thebaud outlined in his RFC assessment.").

In addition, the remaining medical and non-medical evidence of record is consistent with Dr. Jenkins's examination findings, as opposed to the opinions reflected on the mental RFC assessment, and likewise serve as a proper basis for the ALJ to accord less than controlling weight to the treating psychiatrist's RFC assessment. On

13

October 2, 2014, Dr. John Davis, a clinical psychologist, evaluated Blackmon and reported the following on mental status examination: (1) overall satisfactory general appearance and behavior; (2) no abnormalities of speech; (3) mood and affect reflected some anxiety and depression but she did have the capacity for a full range of emotional qualities, with emotional responses being appropriate to thought, content, and situation; (4) she was oriented to person, place and time; (5) no indications of deficits in overall concentration or attention; (6) no indications of deficits in remote, recent or immediate memory; (7) an adequate fund of information; (8) abstract thoughts appeared intact; (9) no loose associations, tangential or circumstantial thinking; (10) no indications of hallucinations or delusions; (11) fair judgment and insight; and (12) normal relationships with her family and peers. (Tr. 288-90.) Dr. Davis concluded that Plaintiff's ability to understand, remember and carry out simple instructions, and to make judgments on simple work-related decisions, is mildly impaired; and that her ability to interact appropriately with the public, co-workers and supervisors, as well as respond appropriately to usual work situations and to changes in a routine work setting, is moderately impaired. (Tr. 291.) This consultative examination from Dr. Davis is consistent with the examination findings of Dr. Jenkins[6] and fully supportive of the RFC determination of the ALJ (*compare id. with* Tr. 22) and, as a consequence, it substantially supports the ALJ's decision to accord little weight to Dr. Jenkins's mental

---

[6] The Plaintiff's suggestion that Dr. Davis's opinion should not be accorded the significant given to it by the ALJ since hat opinion was rendered before she received treatment from Dr. Jenkins and was properly diagnosed (*see* Doc. 9, at 6), ignores the consistency between Dr. Davis's mental status findings with those of Dr. Jenkins and the consistency between Dr. Davis's noted mental limitations and the GAF scores diagnosed by Dr. Jenkins (*compare* Tr. 288-91 *with* Tr. 333-35, 338-40, 349-51 & 355-57).

RFC assessment. *See, e.g., Poellnitz v. Astrue,* 349 Fed.Appx. 500, 503 (11th Cir. Oct. 21, 2009) ("[T]he opinions of the non-examining physicians were consistent with the medical evidence in the record, including information contained in Dr. Tocci's examination report, which assigned Poellnitz a Global Assessment of Functioning ('GAF') score of 55, as well as Poellnitz's reports regarding her daily functioning. So, while the overall assessments of the non-examining physicians conflict with Dr. Tocci's ultimate conclusion of severe limitations, they are actually supported by Dr. Tocci's more specific findings."). Moreover, while Plaintiff correctly notes that Dr. Jack Carney offered no diagnostic impression of Plaintiff and did not acknowledge any mental limitations (*see* Tr. 416-24), contrary to the ALJ's own conclusions (*compare id. with* Tr. 20 & 22), any error by the ALJ in according Dr. Carney's opinion significant weight is harmless, particularly since the mental status findings of Dr. Carney (Tr. 417-19) are inherently consistent with those of both Dr. Davis and Dr. Jenkins (*compare id. with* Tr. 288-91, 333-35, 338-40, 349-51 & 355-57) and such mild to moderate mental status findings are inherently inconsistent with—and do not support—the marked and extreme limitations found by Dr. Jenkins on the mental RFC assessment. And, finally, Plaintiff's documented and reported daily activities—including, doing schoolwork on her laptop, running errands, reading, watching television, handling money, spending time with family, texting, accessing Facebook, playing games on her Kindle Fire, etc. (*see, e.g.,* Tr. 215-16, 290 & 419)—simply do not support the marked and extreme limitations found by Dr. Jenkins on the mental RFC assessment he completed on February 8, 2016; therefore, the ALJ properly accorded Dr. Jenkins's RFC assessment little weight as being inconsistent with evidence of Plaintiff's own daily activities.

In light of the foregoing, the Court finds that good cause existed for the ALJ to not accord controlling weight to the mental RFC assessment completed by Dr. Jenkins. *See Hunter v. Social Sec. Admin., Commissioner,* 808 F.3d 818, 823 (11th Cir. 2015) ("We will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it."), *cert. denied,* 136 S.Ct. 2487, 195 L.Ed.2d 823 (2016). Finally, any suggestion by Plaintiff that the ALJ improperly substituted his own opinion for that of Dr. Jenkins is belied by the record, a record which establishes good cause for the ALJ's failure to assign controlling weight to Dr. Jenkins's mental RFC assessment, while at the same time supplying substantial evidence to support the ALJ's mental RFC determination. Stated somewhat differently, this Court finds that "the ALJ did not 'play doctor' in assessing [Plaintiff's] RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing [Plaintiff's] RFC." *Castle v. Colvin,* 557 Fed.Appx. 849, 853 (11th Cir. Feb. 18, 2014) (citation omitted).

Turning to Plaintiff's other assignment of error, it is clear that Blackmon stakes the position that the ALJ not only erred with respect to respect to her mental RFC but, as well, improperly concluded that she retains the physical RFC to perform sedentary work. (*See* Doc. 9, at 6-10.) In particular, Plaintiff takes aim at Dr. Aaron Mates' consultative report and RFC assessment dated June 18, 2016, contending that both are inconsistent with the other evidence in the record documenting her diabetic neuropathy problems, particularly the consultative examination and report of Dr. Brandon Taylor. (*See id.* at 9-10.)

It is clear that "[a]lthough a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). Indeed, "[s]ince being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10. And while there is certainly evidence in the record reflecting that Plaintiff, at times, has experienced an abnormal and neuropathic gait and, as a consequence, has had difficulty in performing certain actions related to walking, squatting, bending, etc. (*compare* Tr. 324-26 ("The claimant ambulates with difficulty, but she is able to do so without an assistive device. The claimant is able to get up and out of the chair without difficulty. The claimant is able to get on and off the examination table without difficulty. Gait is abnormal and markedly neuropathic. . . . The claimant was able to walk on the toes. The claimant was not able to walk on the heels. The claimant had difficulty squatting. The claimant had difficulty doing tandem heel walk. [P]oor balance and poor proprioception noted on exam. The claimant had difficulty bending over and touching her toes. . . . The claimant exhibited normal mentation. Motor strength was 5/5 in all extremities. The Claimant did not have muscle atrophy. Sensation was normal, decreased sensation to light touch B feet in SPN/DPN/Saphenous nerves. The claimant had difficulty doing finger-to-nose with both hand(s)[,] poor proprioception of finger to nose.") *with, e.g.,* Tr. 277 (decreased sensation to light touch in lateral thighs and legs) and Tr. 280-81, 285, 361 (neuropathy noted)), there are also notations in the record

referencing a normal gait (*see, e.g.,* Tr. 306 ("Normal ambulatory status.") & Tr. 435 ("Gait is normal.")), and normal strength and range of motion, with no swelling or tenderness (*see, e.g.,* Tr. 297, 307, 400 & 436-37).

More importantly, while Dr. Taylor certainly concluded that Plaintiff's neuropathy "causes her to have limitations with standing or walking long periods of time[,]" (Tr. 326), he also concluded that Blackmon was limited to "standing occasionally in an 8[-]hour work day[]" and "walking occasionally in an 8[-]hour work day[,]" (*id.*), with occasionally being defined as "very little up to 1/3 total of a[n] 8[-]hour work day[.]" (*Id.*) And since the full range of sedentary work can be accomplished with occasional walking and standing, *compare* 20 C.F.R. § 404.1567(a) *with* SSR 83-10, the evidence from Dr. Taylor, either alone (Tr. 322—27) or combined with all other evidence of record (*compare id. with* Tr. 276-85, 295-308, 399-414 & 427-37), clearly supports the ALJ's RFC determination that "**claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a)**[.]" (Tr. 22 (emphasis in original)). Thus, Blackmon's second assignment of error is not well taken.

Given that Blackmon's assignments of error are properly overruled and Plaintiff does not challenge the VE's identification of sedentary jobs an individual with the residual functional capacity reflected in the decision can perform (*compare* Doc. 9 *with* Tr. 22, 30 & 42-43), the Commissioner's fifth-step determination is due to be affirmed. *See, e.g., Owens v. Commissioner of Social Security,* 508 Fed.Appx. 881, 883 (11th Cir. Jan. 28, 2013) ("The final step asks whether there are significant numbers of jobs in the national economy that the claimant can perform, given h[er] RFC, age, education, and work experience. The Commissioner bears the burden at step five to show the

existence of such jobs . . . [and one] avenue[] by which the ALJ may determine [that] a claimant has the ability to adjust to other work in the national economy . . . [is] by the use of a VE[.]"(internal citations omitted)); *Land v. Commissioner of Social Security,* 494 Fed.Appx. 47, 50 (11th Cir. Oct. 26, 2012) ("At step five . . . 'the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.' The ALJ may rely solely on the testimony of a VE to meet this burden." (internal citations omitted)). In short, substantial evidence supports the ALJ's determination that Blackmon was not disabled.

## **CONCLUSION**

It is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 7th day of August, 2018.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**
